IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| BEVERLY SCHILLING, ) | |
| ) | |
|     Plaintiff, ) | Civil No. 04-6111-AS |
| ) | |
| vs. ) | |
| ) | |
| JO ANNE B. BARNHART, ) | FINDINGS AND RECOMMENDATION |
| Commissioner of Social Security,) | |
| ) | |
|     Defendant. ) | |

ASHMANSKAS, Magistrate Judge:

    Claimant, Beverly Schilling, brings this action pursuant to the Social Security Act (Act), 42 U.S.C. §§405(g) and 1383(c)(3), seeking judicial review of the Social Security Commissioner's (Commissioner) final decision. The Commissioner denied Schilling's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons set forth

1 - FINDINGS AND RECOMMENDATION                               (LB)

below, the Commissioner's decision is reversed and remanded for further administrative proceedings.

## PROCEDURAL BACKGROUND

Schilling filed an application for DIB and SSI benefits on December 12, 1997, with a protective filing date of October 27, 1997, alleging disability beginning December 19, 1996, due to diffuse and multiple physical aches and pains, fatigue, dizziness, colon problems and fibromyalgia. Her applications were denied initially and on reconsideration. On March 11, 1999, after a timely request for a hearing, Schilling appeared and testified before an administrative law judge (ALJ). Schilling was represented by counsel, Brenda Moseley. Schilling's son, Caleb Schilling, and her friend, Beverly Shoemaker, were present and testified on her behalf. Francene Gomez, a vocational expert (VE), also appeared and testified at the hearing.

Due to Schilling's allegation of depression at the March 11, 1999 hearing, the ALJ referred Schilling for a post-hearing consultative psychological evaluation. A supplemental hearing by telephone was held on January 19, 2000, in Eugene, Oregon. Schilling, represented by Moseley, appeared and testified. Caleb again testified on her behalf, and Gomez testified as an impartial VE.

The ALJ considered the testimony and all other evidence of record and on April 26, 2000, issued a decision finding Schilling

was not disabled within the meaning of the Act at any time through the date of the decision and, therefore, not entitled to DIB and SSI benefits. See 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). This became the final decision of the Commissioner when the Appeals Council declined to review the ALJ's decision. 20 C.F.R. §§ 404.981, 416.1472, 422.210.

**STATEMENT OF FACTS**

The medical records submitted in this case accurately set forth Schilling's medical history as it relates to her claim for benefits. The court has carefully reviewed the extensive medical records submitted here, and the parties are familiar with the records. In addition, the Commissioner stipulates to the ALJ's summary of the medical and testimonial evidence. Accordingly, the details of those medical records will not be recounted here.

At the time of the supplemental hearing Schilling was 53 years old; had completed high school; and had past relevant work as a bank teller, receptionist/secretary and computer data worker. Schilling alleged disability since December 19, 1996, due to diffuse and multiple physical aches and pains, fatigue, dizziness, colon problems and fibromyalgia. She has not performed substantial gainful activity since her alleged disability date.

At the hearing, Schilling, Caleb and Shoemaker testified on Schilling's behalf. Schilling testified regarding her

limitations, her daily activities and her past work experiences, including her assessment that most of her days are "bad days". Caleb testified that Schilling does only occasional household chores and that on "good days" she can get dressed on her own and "do something that needs to be done." He stated that on "bad days", Schilling will normally be in bed. Caleb testified that the number of good days to bad days is roughly even. Caleb also testified that Schilling has difficulty remembering things and is easily frustrated. Shoemaker testified that on "good days" Schilling starts out "very smart, very bright" but as she tires she cannot recall things and has difficulty sitting in one place. Shoemaker further testified that if Schilling pushes herself too hard, she ends up in bed for several days.

Gomez testified that Schilling's past relevant work, including work as a bank teller (light, skilled work at SVP5), receptionist (sedentary, semiskilled work at SVP4) and computer date entry operator (sedentary, semiskilled work at SVP4), were within her residual functional capacity (RFC) for the full range of light work. Based on the testimony of Gomez, the ALJ determined that prior to the March 11, 1999, hearing, Schilling was able to perform her past relevant work. He further determined that since March 11, 1999, while physically limited to light work, additionally, secondary to her mental impairments, Schilling was unable to perform complex or detailed tasks, but

4 - FINDINGS AND RECOMMENDATION                              (LB)

was able to understand, remember and carry out simple routine tasks (unskilled work activity). Gomez testified that a limitation to simple and repetitive work would preclude all of Schilling's past relevant work. Gomez testified that assuming the hypothetical individual's specific work restrictions, Schilling was capable of making a vocational adjustment to other work, specifically, a motel cleaner, electrode cleaner and electronics worker.

The ALJ found that Schilling has not engaged in substantial gainful activity since December 19, 1996, the date of alleged onset of disability; the medical evidence established that she has one or more severe impairments, but she does not have an impairment or combination of impairments which meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4; Schilling's allegations regarding her limitations are not totally credible; she is an "individual closely approaching advanced age;" she has a RFC for the full range of light work prior to March 11, 1999; and, since March 11, 1999, she is unable to return to any of her past relevant work, but could perform light, unskilled work such as motel cleaner, electrode cleaner and electronics worker. Accordingly, the ALJ found that Schilling is not disabled under the Act and eligible for DIB and SSI because she retained the residual functional capacity to perform other work.

**STANDARD OF REVIEW**

This court must affirm the Secretary's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the Secretary's conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

To be found disabled under the Act, an individual must have a medically determinable physical or mental impairment of such severity that he or she is not only unable to do his or her previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See 20 C.F.R. §§ 404.1520, 416.920.

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-step sequential process for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920.  First the Secretary determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled.  Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not disabled.

In step three the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity."  Id.; see 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. Yuckert, 482 U.S. at 141.

In step four the Secretary determines whether the claimant can still perform "past relevant work."  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can work, she is not

disabled. If she cannot perform past relevant work, the burden shifts to the Secretary. In step five, the Secretary must establish that the claimant can perform other work in the national economy. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Secretary meets this burden, then claimant is deemed not disabled. 20 C.F.R. §§ 404.1566, 416.966.

**DISCUSSION**

Schilling contends that the decision of the ALJ was not based on substantial evidence as required by 42 U.S.C. § 405(g), and the ALJ erred as a matter of law in denying her claims. Specifically, Schilling argues that the Commissioner failed to (1) adequately consider the combined effects of her impairments, including whether exertional capacity was compromised by her non-exertional limitations; (2) sustain her burden of showing that there is other work in the national economy; and (3) give adequate reasons for discounting the opinions of Schilling's treating physicians.

The Commissioner concedes error by the ALJ in developing the record and seeks a remand. The Commissioner acknowledges that outstanding medical and vocational issues remain to be resolved before awarding or denying benefits. Specifically, on remand, the ALJ would be directed to evaluate all of Schilling's alleged and/or diagnosed impairments, including her obesity, carpal

tunnel syndrome, spastic colon or irritable bowel syndrome, thoracic outlet syndrome, degenerative changes in the lumbar spine, and anemia as well as other personality and/or affective disorders (narcissistic, somatoform, chronic pain). The ALJ would be directed to further evaluate Schilling's maximum RFC considering her severe and nonsevere impairments in combination. The ALJ would be directed to further evaluate her ability to return to her past relevant work and, as needed, her ability to perform other work in the national economy. Finally, the Commissioner states that Schilling should be afforded the opportunity to submit additional evidence and argument.

While the parties agree the ALJ's decision is legally deficient and must be remanded, they dispute whether the remand should be for further administrative proceedings or an award of benefits. Schilling insists that once her evidence is credited as true, the record establishes that she was disabled during the relevant period and further administrative hearings would be futile. Conversely, the Commissioner insists that there are unresolved issues and the record does not require a finding of disability. The Commissioner maintains, however, that the "inadequately-addressed" evidence falls short of documenting a period of disability as defined by the Act. As such, the matter should be remanded for further proceedings in order for the ALJ to develop the record completely.

The court will consider the grounds for error asserted by the parties to determine the appropriate remedy. See, e.g., Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003)(remand for further proceedings rather than for award of benefits is proper where outstanding issues remain). If the court determines that: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited, the court will remand the case for an award of benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

There is no dispute that the ALJ failed to give legally sufficient reasons for rejecting certain evidence and failed to address properly certain relevant evidence. In addition, the ALJ failed to clarify whether Schilling's limitations, severe and nonsevere, would impact available jobs. Accordingly, the dispute now centers on the second and third factors set forth in Smolen. As a practical matter, the Ninth Circuit views the three-part test set forth in Smolen as a two-part inquiry in which the third prong is a subcategory of the second. See, e.g., Harman v. Apfel, 211 F.3d 1172, 1178 n.7 (9th Cir. 2000). Namely, if the ALJ were not "required to find the claimant disabled" upon crediting the evidence, then this certainly would constitute an

"outstanding issue [ ] that must be resolved before a determination of disability [could] be made." Smolen, 80 F.3d at 1292. Below, the court will consider the medical and testimonial evidence to determine whether outstanding issues remain or whether Schilling can be found disabled on the record before the court.

I.  **Residual Functional Capacity**

The court will consider in combination Schilling's first two grounds asserted to be in error; namely, that the ALJ failed to adequately consider the combined effects of her impairments, including whether exertional capacity was compromised by her non-exertional limitations; and he failed to sustain his burden of showing that there is other work in the national economy. In essence, both of these grounds are a challenge to the ALJ's determination that Schilling retained the RFC to perform work.

In his written decision, the ALJ determined that "the totality of the evidence shows that [Schilling] has a diagnosis of fibromyalgia with resultant diffuse aches and pains, with a significant somatic component which impacts her perception of pain and functional limitation. . . . She also has a personality disorder and depressive symptoms which somewhat restrict her work-related abilities." Nevertheless, the ALJ found that Schilling retained a RFC for the full range of light work prior to March 11, 1999; and, since March 11, 1999, she was unable to

return to any of her past relevant work, but could perform light, unskilled work such as motel cleaner, electrode cleaner and electronics worker

Schilling insists that the ALJ failed to consider the combined effects of her impairments, whether severe or nonsevere. She insists that Social Security Regulation (SSR) 96-8p requires an ALJ to consider the impact of all of her impairments regardless of whether an impairment would be considered severe when standing alone.

Social Security regulations define RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. 404, Subpt. P, App. 2 § 200.00(c). In other words, what an individual can still do despite her limitations. See SSR 96-8p. In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a); Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995)(internal quotation marks omitted). The regulations further specify: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." Id. at § 404.1545(b).

SSR 96-8p defines RFC as "the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." The burden is on the ALJ to prove that Schilling was capable of performing her past relevant work or alternate jobs in accordance with her RFC. Perminter v. Heckler, 765 F.2d 870, 871-872 (9th Cir. 1985).

The Commissioner concedes that the ALJ was required to evaluate all of Schilling's alleged and/or diagnosed impairments including her obesity, carpal tunnel syndrome, spastic colon or irritable bowel syndrome, thoracic outlet syndrome, degenerative changes in the lumbar spine, and anemia as well as other personality and/or affective disorders (narcissistic, somatoform, chronic pain). Because the parties agree that the ALJ failed to consider the impact of Schilling's other listed impairments, including her obesity,[1] the court need not reach the issue of whether the ALJ properly assessed Schilling's RFC. The court notes that prior to determining an individual's RFC for work on a regular and continuing basis, the ALJ must first assess the nature and extent of her physical and mental impairments. The

---

[1] The ALJ failed to include the limitations caused by the addition of Schilling's obesity. See SSR 00-3P ("In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity.").

record on Schilling's exertional and nonexertional limitations is incomplete.  On remand the ALJ must reconsider the full extent of Schilling's exertional[2] and nonexertional limitations, whether severe or nonsevere, during the relevant time period.  Depending on the impact of these other enumerated limitations, the ALJ will be required to make a new determination regarding Schilling's RFC.

Moreover, the ALJ should evaluate on a function-by-function basis whether Schilling is in fact capable of performing substantially all of the functional requirements of light work as required by SSR 96-8p.  "Light work" is defined in the regulations as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and requiring "a great deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 416.967(b).  At step five the ALJ applied the Medical-Vocational Guidelines (Guidelines), using Schilling's RFC to perform light work.  He identified three

---

[2] An ALJ's determination of exertional RFC alone may determine whether a claimant qualifies for benefits.  For example, in a case such as this one, the claimant is an individual closely approaching advanced age, with limited education and no transferrable skills from previous work experience.  Such an individual is presumptively disabled if it is determined that they retain the capacity to perform only sedentary, rather than light work.  See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.10.  And they are presumptively not disabled if they retain the exertional capacity to perform a range of light work.  Id.

examples of jobs Schilling was capable of performing: motel cleaner, electrode cleaner and electronics worker.  The ALJ's application of the Guidelines may also be in error, because the Guidelines assume an individual is capable of performing the full range of work at a given exertional level, and Schilling may not be able to meet this standard.

If a claimant has functional limitations or work restrictions which prevent her from performing the full range of work at a given level of exertion, the Guidelines cannot be used in step five to determine whether she is disabled.  Instead, the ALJ must elicit testimony from a VE to determine whether jobs exist in the national economy that the claimant can perform despite his limitations and restrictions.  To elicit meaningful testimony from the VE, the ALJ must pose a hypothetical question that accurately reflects all of the claimant's functional limitations and work restrictions.  Tacket v. Apfel, 180 F.3d 1094, 1103-1104 (9th Cir. 1999).

A disability determination cannot be made until further administrative proceedings resolve the issue of Schilling's RFC.  If Schilling's functional limitations, in fact, preclude her from performing substantially all the requirements of the "light work" exertional level, she cannot be found "disabled" before eliciting testimony from a VE, who will help clarify whether jobs exist in

the national economy that can be performed by someone with Schilling's limitations.

The ALJ did not meet his burden of showing that Schilling retained the RFC to perform a range of light work in the national economy. Accordingly, this issue must be remanded to the ALJ to consider all of Schilling's functional limitations, whether severe or nonsevere, to determine whether she retains an ability to perform sustained work.

## II. Treating Physicians' Testimony

Next, Schilling challenges the ALJ's decision on the ground that he "fail[ed] to even acknowledge the limitations proposed by neurologist George Knox which precluded [] Schilling from repetitive hand use or from lifting at or above shoulder level." On January 3, 1997, Dr. Knox completed a form that indicated Schilling should be restricted from repetitive movements of the right and left hand; and from work with either arm at or above shoulder level. Schilling contends that this limitation was also suggested by the Social Security Administration's nonexamining physician, Howard Johnson, M.D. According to Schilling, these additional limitations would have precluded Shilling's performance of any of the jobs proposed by the VE and, therefore, a finding of disability would have been required.

Regarding this assessment of Schilling by Dr. Knox, the ALJ noted:

> Three different documents signed by Dr. Knox on the same
> day, January 3, 1997, make conflicting assessments; one
> indicates that the claimant can return to work as a teller
> 40 hours per week with some postural limitations (Exhibit
> 2F/19), while two others, which indicate conflicting job
> demands for her teller job, indicate that she cannot be
> released to that position (Exhibits 2F/16-17).

Regardless, all three assessments signed by Knox on January 3, 1997, include a restriction for lifting above her shoulders and it should have been considered by the ALJ. When Gomez was asked about the limitation of no work above shoulder level, she testified that the restriction would affect Schilling's ability to perform the job of motel cleaner. On remand, the ALJ must consider the impact of this limitation on Schilling's ability to perform work in the national economy.

**III. Award of Benefits v. Additional Proceedings**

Based on the foregoing, the court finds that the ALJ failed to provide substantial evidence for its finding that Schilling was not disabled under the meaning of the Act and the case must be remanded for further findings. The court finds that under the circumstances here "outstanding issues must be resolved before a proper determination can be made." Bunnell, 336 F.3d at 1115 (remanding for reconsideration where, among other things, the ALJ failed to provide adequate reasons for rejecting the opinion of the treating physicians). Indeed, even if the court credits as true, Dr. Knox's determination that Schilling is unable to perform work that requires lifting over her shoulders, it would

not mandate a finding of disability.  When considering this
limitation, Gomez determined only that the work of motel cleaner
would be precluded.  The record remains incomplete whether
Schilling has the RFC to perform other work.  This case should be
remanded for the ALJ to further develop the record regrading the
full extent of Schilling's mental and physical impairments.  On
remand, the ALJ must consider all of Schilling's limitations,
exertional and non-exertional, whether they are severe or
nonsevere, to determine whether she is disable under the Act.

## CONCLUSION

Based on the foregoing, the decision of the Commissioner should be REVERSED AND REMANDED for further administrative hearings.  The Commissioner's Motion to Remand (doc. #13) should be GRANTED.  Accordingly, Schilling's complaint (doc. #2) should be DISMISSED and all other motions are DENIED as moot.

Dated this __2__ day of June 2005.

                                     /s/Donald C. Ashmanskas
                                       Donald C. Ashmanskas
                                   United States Magistrate Judge

**SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due June 17, 2005. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.